# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IAN S. PHILLIPS, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 05-742 (SLR) |
| | ) |
| MERRILL LYNCH PIERCE FENNER, | ) JURY TRIAL DEMANDED |
| & SMITH INCORPORATED, | ) |
| | ) |
| Defendant. | ) |

## DEFENDANT'S OPENING BRIEF IN SUPPORT
## OF ITS MOTION TO DISMISS PURSUANT TO RULE 12(b)(6),
## OR TRANSFER VENUE PURSUANT TO 28 U.S.C.A. § 1404(a)

**DUANE MORRIS LLP**
Daniel V. Folt (Bar I.D. No. 3143)
Gary W. Lipkin (Bar I.D. No. 4044)
1100 N. Market St., 12th Floor
Wilmington, DE 19801
Tel:  302.657.4927
Fax: 302.657.4901


Attorneys for Defendant
Merrill Lynch, Pierce, Fenner
& Smith Incorporated

Dated:  December 29, 2005

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ iii

Preliminary Statement ........................................................................................................ 1

Background ........................................................................................................................ 2

The Complaint Is Barred By The Statute Of Limitations .................................................. 3

The Complaint Should Be Dismissed For Failure To State A Claim ................................. 4

If Not Dismissed, This Action Should Be Transferred To Connecticut ............................. 4

ARGUMENT ....................................................................................................................... 5

    I.      The Complaint is Time Barred ............................................................................. 5

    II.     The Complaint Fails to State A Claim Pursuant To Rule 12(b)(6) ..................... 9

           A.     The Complaint Fails To State A Claim For Breach Of Contract ............... 9

           B.     The Complaint Fails To State A Claim For *Respondeat Superior*" (Negligence/Tort Based Liability) ............................................................ 11

    III.    If Not Dismissed, This Action Should Be Transfered To The District of Connecticut ...................................................................................... 13

           A.     This Case Should Be Transferred To Connecticut Where Mr. Phillips' First-Brought Arbitration Against Merrill Lynch Is Pending .................... 14

           B.     Transfer To The District Of Connecticut Satisfies The *Jumara* Analysis ........................................................................................ 16

                1.     Plaintiffs' Choice Of Forum Is Entitled To No Weight Here ....... 16

                2.     The Complaint Should Be Heard Where It Arose By A Court Familiar With The Unique Issues Of Substantive State Law At Issue Here -- Connecticut ................................................ 18

3. The Convenience Of The Parties And Witnesses And Practical Considerations For Trial (If There Ever Could Be One) Weighs Strongly in Favor Of Transfer...................................................19

4. Relative Court Congestion Weighs In Favor Of Transfer .........................21

CONCLUSION...................................................................................................22

# TABLE OF AUTHORITIES

## CASES

*3Com Corp. v. D-Link Sys.*, 2003 U.S. Dist. LEXIS 7120 (D. Del. April 25, 2003) ...................20

*Airport Investors Ltd. P'ship v. Neatrour*, 2004 U.S. Dist. LEXIS 1391 (D. Del. Feb. 3, 2004) ...............................................................................................................................15, 16

*American Energy Techs., Inc. v. Colley & McCoy Co.*, 1999 U.S. Dist. LEXIS 7097 (D. Del. 1999) ....................................................................................................................5, 6, 7

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997) ....................................10

*Caravan Mobile Home Sales, Inc. v. Lehman Bros. Kuhn Loeb, Inc.*, 769 F.2d 561 (9th Cir. 1995) ................................................................................................................................10

*Chem-Tek, Inc. v. General Motors Corp.*, 816 F. Supp. 123 (D. Conn. 1993)...............................9

*Clopay Corp. v. Newell Cos., Inc.*, 527 F. Supp. 733 (D. Del. 1981)...........................................16

*De Kwiatkowski v. Bear Stearns and Co., Inc.*, 306 F.3d 1293 (2d Cir. 2002) ................10, 11, 12

*DeWitt v. Penn-Del Directory Corp.*, 872 F. Supp. 126 (D. Del. 1994)........................................5

*In re Dean Witter Managed Futures Ltd. Partnership Litig.*, 282 A.D.2d 271, 724 N.Y.S.2d 149 (1st Dep't. 2001) .........................................................................................11

*Dodds v. Cigna Securities, Inc.*, 12 F.3d 346 (2d Cir. 1993).........................................................9

*Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383 (2d Cir. 2003)..............14

*Eli Attia Architects v. Safra*, 1996 WL 480721 (S.D.N.Y. 1996)................................................10

*Elmer v. Tenneco Resins, Inc.*, 698 F. Supp. 535 (D. Del. 1988) ..................................................7

*Fekety v. Gruntal & Co., Inc.*, 191 A.D.2d 370, 595 N.Y.S.2d 190 (1st Dep't 1993) ..................12

*Fred Smith Plumbing & Heating Co. v. Christensen*, 233 A.D.2d 207, 649 N.Y.S.2d 684 (1st Dept. 1996) ...................................................................................................................8

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947) ..........................................................................18

*Hill v. Williams*, 74 Conn. App. 654 (Conn. App. Ct. 2003).........................................................7

*J-Squared Technologies, Inc. v. Motorola, Inc.*, 2005 WL 388599 (D. Del. Feb. 2, 2005) ....16, 17

*Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (3d Cir. 1995) ..................................................13, 16

*Kimball Assoc., P.A. v. Homer Central School Dist.*, No. 00 Civ. 897, 2000 WL 1720751
(N.D.N.Y. Nov. 9, 2000) ...........................................................................................................10

*Lehman Bros. Commercial Corp. v. Minmetals Intern. Non-Ferrous Metals Trading Co.*,
179 F. Supp. 2d 159 (S.D.N.Y. 2001)........................................................................................9

*Leib v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 461 F. Supp. 951 (E.D. Mich. 1978) .........10

*In the Matter of Aubrey O'Connor, et al.*, Administrative Proceeding File No. 3-9327,
Initial Decision Release No. 193, 2001 SEC LEXIS 2047 (SEC 2001) (Sept. 28, 2001) ...............9

*Mentor Graphics v. Quickturn Design Sys., Inc.*, 77 F. Supp. 2d 505 (D. Del. 1999) ..................20

*Minstar, Inc. v. Laborde*, 626 F. Supp. 142 (D. Del. 1985)...........................................................13

*O'Hara v. Connecticut*, 218 Conn. 628, 590 A.2d 948 (1991)....................................................9, 21

*Ole K. Nilssen And Geo Foundation, Ltd. v. Osram Sylvania, Inc, and Osram Sylvania
Products, Inc.*, 2001 U.S. Dist. LEXIS 25570 (D. Del. May 1, 2001) .........................................20

*Pennwalt v. Purex Industries, Inc.*, 659 F. Supp. 287 (D. Del. 1986) .........................................18

*Perl v. Smith Barney, Inc.*, 230 A.D.2d 664, 646 N.Y.S. 2d 678 (1st Dep't 1996) ......................12

*Plumb v. Cottle*, 492 F. Supp. 1330 (D. Del. 1980)........................................................................6

*Press v. Chemical Investment Serv. Corp.*, 166 F.3d 529 (2d Cir. 1999) .....................................11

*Puckett v. Rufenacht, Bromagen & Hertz, Inc.*, 587 So. 2d 273 (Miss. 1991) .............................11

*R.M. Kliment & Frances Halsband, Architects v. McKinsey & Co.*, 3 N.Y.3d 538, 821
N.E.2d 952 (N.Y. 2004)..............................................................................................................7

*Robinson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 337 F. Supp. 107 (N.D. Ala.
1971) .........................................................................................................................................11

*Rumsfeld v. Padilla*, 542 U.S. 426 (2004) ....................................................................................17

*Seus v. John Nuveen & Co.*, 146 F.3d 175 (3d Cir. 1998)............................................................14

*Sharples v. Ruby Tuesday, Inc.*, 1987 U.S. Dist. LEXIS 488 (D. Del. 1987)..................................6

*TCW/Camil Holding L.L.C. v. Fox Haron & Camerini LLP*, 2004 WL 1043193 (D. Del. Apr. 30, 2004) ............................................................................................................16

*Tsoukanelis v. Country Pure Foods, Inc.*, 337 F. Supp. 2d 600 (D. Del. 2004) ............14

*Underkofler v. Community Health Care Plan, Inc.*, 1999 U.S. Dist. LEXIS 10515 (D. Conn. June 17, 1999) ...................................................................................................9

*United States v. Kubrick*, 444 U.S. 111, 100 S. Ct. 352, 62 L. Ed. 2d 259 (1979) ...........8

*Van Dusen v. Barrack*, 376 U.S. 612 (1964) .................................................................13

*Wall Street Associates v. Becker Paribas Inc.*, 27 F.3d 845 (2d Cir. 1994) ...............14

*Walston & Co. v. Miller*, 100 Ariz. 48, 410 P.2d 658 (Ariz. 1966) .............................11

*Waste Distillation*, 775 F. Supp. 759 (D. Del. 1991) ...................................................16

*West Haven v. Commercial Union Ins. Co.*, 894 F.2d 540 (2d Cir. 1990) ......................8

*Williams v. Rene*, 72 F.3d 1096 (3d Cir. 1995) ..............................................................6

## STATUTES

Conn. Gen. Stat. § 52-576 ...............................................................................................6

Conn. Gen. Stat. § 52-577 ...............................................................................................6

10 *Del. C.* § 8121 .............................................................................................................6

10 *Del. C.* § 8106 .............................................................................................................6

NY CPLR § 213 ...............................................................................................................6

NY CPLR § 214 .............................................................................................................6, 7

Fed. R. Civ. P. 8(c) ..........................................................................................................5

Fed. R. Civ. P. 12 ......................................................................................................*passim*

Fed. R. Civ. P. 45(c)(3) .................................................................................................17

Federal Arbitration Act, 9 U.S.C. § 1, *et seq* ..........................................................14, 15

28 U.S.C. § 1404(a) .......................................................................................................13

v

Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch"), respectfully submits this Memorandum of Law in Support of its Motion to Dismiss Pursuant to Rule 12(b)(6) or Transfer Venue Pursuant to 28 U.S.C.A. § 1404(a).

## Preliminary Statement

This is not the Plaintiff's first attempt to cause someone else to bear the losses he incurred due to his investment decisions. Pursuant to the binding arbitration agreement that governed his account with Merrill Lynch, Plaintiff Ian S. Phillips ("Mr. Phillips"), a resident of Old Saybrook, Connecticut, filed an arbitration Statement of Claim with the NASD, in Hartford, Connecticut, in January 2005 against Merrill Lynch and other parties who do business in Connecticut, concerning events that transpired in New York and Connecticut, ("Statement of Claim" attached herewith as Ex. "A"). Because that Statement of Claim was predicated on causes of action that accrued as early as 1999, nearly six years before commencing arbitration, his claims were dismissed by the Panel as untimely. (*See* Panel Order, (the "Award") attached as Ex. "B"). Merrill Lynch has recently petitioned the United States District Court for the District of Connecticut for confirmation of the Award ("Petition" attached as Ex. "C").

Despite the previous arbitration decision in Connecticut, Mr. Phillips has commenced this civil action here in Delaware. The Complaint, however, is barred by the statute of limitations and fails to state a claim, or at minimum, should be transferred to the District of Connecticut, where Merrill Lynch's Petition to confirm the arbitration award is pending.

1

# Background[1]

The allegations of Mr. Phillips' now dismissed Statement of Claim filed in arbitration are identical to those alleged here. In both cases, Mr. Phillips alleges that he opened an account with Merrill Lynch in May 1999 through a financial advisor at Merrill Lynch (Sanford Perlin). Mr. Phillips alleges that Merrill Lynch, through Mr. Perlin, made unsuitable investments. (*See* Compl. ¶¶ 6-7, *see also* Statement of Claim, ¶ 5). In May 2000, Mr. Perlin left Merrill Lynch and joined Round Hill Securities, Inc. ("Round Hill") in Connecticut and Mr. Phillips closed his Merrill Lynch account by transferring his assets to Round Hill. (*See* Compl. ¶ 47, *see also* Statement of Claim, ¶¶ 60-63).

In January 2005, nearly five years after closing his Merrill Lynch account, Mr. Phillips filed an arbitration claim with the NASD, naming Merrill Lynch and Round Hill as respondents in that action. The venue in the prior arbitration action was Hartford, Connecticut. On May 18, 2005, Merrill Lynch moved to dismiss Mr. Phillips' Statement of Claim as untimely pursuant to the applicable Connecticut and federal statutes of limitations. The motion to dismiss was fully briefed by both parties, and oral argument was held on August 5, 2005. During oral argument, Mr. Phillips and Merrill Lynch were provided with a full opportunity to present their cases to the entire arbitration panel comprised of three arbitrators.[2] Though the panel initially denied Merrill Lynch's motion, it *sua sponte* reconsidered its initial ruling and granted Merrill Lynch's motion to dismiss all of Mr. Phillips' claims. (*See* Ex. "B"). The prior arbitration action is no longer

---

[1]  Merrill Lynch is cognizant that this Court must accept the well-pleaded facts of the Complaint as true for purposes of determining Merrill Lynch's Rule 12(b)(6) motion. Those facts and legal proceedings asserted here that are not alleged in the Complaint are provided in connection with Merrill Lynch's alternative motion to transfer this case to the District of Connecticut.

[2]  Round Hill also filed a motion to dismiss. After oral argument on Round Hill's motion to dismiss, the arbitration panel denied their motion. Round Hill ultimately entered into a settlement with Mr. Phillips.

pending and the NASD has closed the case.

Despite the prior arbitration panel's decision, Mr. Phillips commenced this action on October 24, 2005, with a Complaint that is, with respect to Merrill Lynch, word for word identical to the Statement of Claim filed in the arbitration. The only differences are that, because Round Hill settled, Round Hill is not named as a party here, and Mr. Phillips now limits his claims to breach of contract under Connecticut and New York law, along with a claim of *respondeat superior*, whereas in the arbitration his claims were for various tort based theories in addition to breach of contract (with no law specified) and *respondeat superior*.

On December 23, 2005 Merrill Lynch filed a petition to confirm the arbitration award, now pending in federal court in Bridgeport, Connecticut. (*See* Docket Sheet attached as Ex. "D").

This action should be dismissed or transferred to the District of Connecticut.

## The Complaint Is Barred By The Statute Of Limitations

This Court, sitting in diversity, must apply Delaware's borrowing statute to determine the applicable limitations periods for Mr. Phillips' claims. Pursuant to that statute, this Court must apply the shorter of either Delaware's or the foreign state's limitations periods. Assuming, *arguendo*, that Mr. Phillips' claims can be deemed contract claims as they are labeled, Delaware's governing limitations period (via the borrowing statute) is three years. But even if Connecticut or New York's limitations periods applied, under both states' law, Mr. Phillips' claims sound in tort, subject again to three year limitations periods. The Complaint should be dismissed as time barred.

### The Complaint Should Be Dismissed For Failure To State A Claim

As a matter of law, the Complaint fails to state a claim upon which relief may be granted. Mr. Phillips improperly attempts to dress up what most courts agree is a securities claim -- here that Merrill Lynch made "unsuitable" investments on his behalf -- in the guise of breach of contract claims. Mr. Phillips' "suitability" claims provide no basis for breach of contract claims, as a matter of law. The written agreement governing Mr. Phillips' Merrill Lynch account contains no promise by Merrill Lynch to provide prudent or suitable investment advice, and as a matter of law, no such obligation may be implied. As a matter of law, the Complaint fails to state any claim for breach of contract.

For many of the same reasons, the Complaint fails to state a claim for "*respondeat superior.*" As a claim grounded in negligence, the Plaintiff must plead (among other things) that Merrill Lynch owed him a duty that had been breached. But as a matter of law, Merrill Lynch owed Mr. Phillips no duty to provide prudent investment advice or to otherwise guide Mr. Phillips toward "suitable" investments.

### If Not Dismissed, This Action Should Be Transferred To Connecticut

As far removed as the Complaint is from stating a timely or legally cognizable claim, it is even further removed from the logical venue most convenient to all parties. Other than the fact that Merrill Lynch is incorporated in Delaware, the Plaintiff's chosen venue has no connection whatsoever to his claims. Rather, the events that transpired in 1999 and 2000 that form the basis for the Complaint occurred in New York and Connecticut -- the venue where Mr. Phillips lives and first filed his arbitration. This case should be transferred to Connecticut to be consolidated with the petition pending there to confirm the arbitration panel's final award dismissing Mr. Phillips' purported claims. Delaware, while a "proper venue" in the minimal statutory sense, is

not the locus in which an efficient, cost effective and convenient resolution of Mr. Phillips'

dismissed claims pending confirmation by another federal court may be conducted.

In short, this Court should promptly dismiss this action with prejudice or, at a minimum

should transfer the action to the District of Connecticut.

## ARGUMENT

### I.    THE COMPLAINT IS TIME BARRED

On the face of the Complaint, Mr. Phillips' claims accrued in 1999 -- but for argument

sake only, the claims could not have accrued any later than in August, 2001.[3]  (*See* Compl. ¶ 51

("In August of 2001, Plaintiff liquidated 90% of his Olympus holdings at an approximate loss of

$800,000," the last alleged event concerning Plaintiff's losses)).   This action was filed on

October 24, 2005, more than four years later.   The longest applicable limitations period

governing this Complaint (as well as the previous Statement of Claim) is *three years*, and

accordingly, this Complaint should be dismissed.[4]

"[I]in determining the applicable limitations period, this Court, guided by the Erie

doctrine, must apply the statutes of limitations of the forum state in diversity cases." *American*

*Energy Techs., Inc. v. Colley & McCoy Co.*, 1999 U.S. Dist. LEXIS 7097, at *8-9 (D. Del. 1999)

(breach of contract action).  "A federal court sitting in diversity is required to apply Delaware's

---

[3]  In fact, Mr. Phillips alleges that he suffered losses causing the accrual of his claims in 1999.  (*See* Compl. ¶ 34).  Merrill Lynch posits here for argument sake only that the limitations period could not have accrued after August, 2001, as accrual on that date nonetheless results in Mr. Phillips' claims being time barred.  Merrill Lynch reserves all rights to demonstrate on the face of the Complaint or subsequently prove that the accrual of Mr. Phillips' claims was much earlier, if necessary.

[4]  "The Federal Rules of Civil Procedure classify statutes of limitations as affirmative defenses to the plaintiff's claim. Fed. R. Civ. P. 8(c).  The courts, however, generally agree that affirmative defenses may be asserted in a motion to dismiss under Rule 12(b)(6), 'provided that the complaint shows affirmatively that the claim is barred." *DeWitt v. Penn-Del Directory Corp.*, 872 F. Supp. 126, 132 (D. Del. 1994)

borrowing statute, 10 Del. C. § 8121, when the cause of action arises outside of Delaware." *Id.* *See also*, *Elmer v. Tenneco Resins, Inc.*, 698 F. Supp. 535 (D. Del. 1988) (A court must apply Delaware's borrowing statute when a nonresident brings a cause of action in a Delaware court and the cause of action arose outside of Delaware); *Sharples v. Ruby Tuesday, Inc.*, 1987 U.S. Dist. LEXIS 488 (D. Del. 1987) (Delaware's borrowing statute applies to choice of law analysis for statute of limitations). There is no allegation in the Complaint referring to any event that occurred in Delaware, and the parties allegedly reside, or conducted their business regarding this litigation, outside of Delaware. (*See* Compl. ¶¶ 1, 6 and 13). Accordingly, the cause of action arose outside of Delaware and the borrowing statute applies. That statute states in pertinent part:

> Where a cause of action arises outside of this State, *an action cannot be brought in a court of this State to enforce such cause of action after the expiration of whichever is shorter*, the time limited by the law of this State, or the time limited by the law of the state or country where the cause of action arose, for bringing an action upon such cause of action.

10 Del. C. § 8121 (emphasis added).

Assuming *arguendo* that Mr. Phillips' claims are in fact contract claims, Connecticut's and New York's limitations periods for contract actions is six years. Conn. Gen. Stat. § 52-576; NY CPLR § 213. Mr. Phillips' claim for "respondeat superior" is one for negligence,[5] and is subject to Connecticut's and New York's three year limitations periods. Conn. Gen. Stat. § 52-577; NY CPLR §214 In Delaware, a breach of contract claim must be brought within *three years*, 10 Del. C. § 8106, and a claim for negligence must be brought within three years, *Plumb v. Cottle*, 492 F. Supp. 1330, 1336 (D. Del. 1980) (applying borrowing statute). Because

---

(citations omitted).

[5] *Respondeat superior* is a theory of liability providing "that an employer is responsible for the negligence of its employees that occurs within the course and scope of their employment." *Williams v. Rene*, 72 F.3d 1096, 1099 (3d Cir. 1995)

Delaware's "borrowing statute by its terms requires the Court to apply the shorter of Delaware's statute of limitations or the statute of limitations of the state where the cause of action arose," *American Energy*, 1999 U.S. Dist. LEXIS 7097, at * 9-10, the applicable Delaware limitations periods for Mr. Phillips' claims are three years. On the face of the Complaint, Mr. Phillips' claims, which arose at the absolute latest in August, 2001, have long expired.

Even if the limitations periods of Connecticut or New York were applied to this action, the Complaint is still time barred. Mr. Phillips' purported breach of contract claims are in fact tort claims under well-settled law. Whatever label Mr. Phillips has chosen, his claims are in substance for professional malpractice -- failure to make suitable investments. (*See* Compl. ¶¶ 6-7). In Connecticut, where the "complaint sounds in breach of contract, the six year statute of limitations" applies, but in cases like this where the "complaint merely pleads legal malpractice or other claims sounding in tort, the applicable statutes of limitations would be at most three years." *Hill v. Williams*, 74 Conn. App. 654, 658 (Conn. App. Ct. 2003). Similarly, in New York, NY CPLR §214(6) "provide[s] that the limitations period in [professional] malpractice claims is three years, whether the complaint is cast in contract or in tort." *R.M. Kliment & Frances Halsband, Architects v. McKinsey & Co.*, 3 N.Y.3d 538, 539, 821 N.E.2d 952, 953; 788 N.Y.S.2d 648, 649 (2004). NY CPLR §214(6) provides a three year limitations period for "an action to recover damages for malpractice, other than medical, dental or podiatric malpractice, regardless of whether the underlying theory is based in contract or tort."

Mr. Phillips' contract claims (and derivative *respondeat superior* claim) are claims for professional negligence. As Mr. Phillips alleges, his claims "relate[s] to gross misconduct and reckless mishandling of [his] investment accounts by Merrill Lynch." (Compl. ¶ 6). "A cause of action alleging professional malpractice, *i.e.*, that a professional failed to perform services with

due care and in accordance with the recognized and accepted practices of the profession, is governed by the three year Statute of Limitations applicable to negligence actions stated in CPLR 214 (6)." *Fred Smith Plumbing & Heating Co. v. Christensen*, 233 A.D.2d 207, 208, 649 N.Y.S.2d 684, 685 (1st Dept. 1996); *see also West Haven v. Commercial Union Ins. Co.*, 894 F.2d 540, 546 (2d Cir. 1990) (A "claim involving a duty of good faith and fair dealing sounds in tort, and is properly governed by Connecticut's three-year general tort statute of limitations." (citations omitted)).

Irrespective of which state's limitations periods applies, the Complaint should be dismissed. Statutes of limitations were enacted precisely to prevent the injustice Merrill Lynch now faces in defending this case. Mr. Phillips has not given any reason for his delay. There is no suggestion that he was unaware of his rights, unable to bring these claims, or that Merrill Lynch in any way interfered with his efforts to pursue his claims. Mr. Phillips' failure "to put the adversary on notice to defend within a specified period of time and that 'the right to be free of stale claims in time comes to prevail over the right to prosecute them.'" *United States* v. *Kubrick*, 444 U.S. 111, 117, 100 S. Ct. 352, 358, 62 L. Ed. 2d 259, 265 (1979) (citations omitted). While statutes of limitations afford litigants a reasonable time to file their claims, they also "protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise." *Id.* at 117. Because, the applicable statutes of limitations in this case are three years, which have long since expired, Mr. Phillips' claims should be dismissed.

## II.    THE COMPLAINT FAILS TO STATE A CLAIM PURSUANT TO RULE 12(b)(6)

### A.    The Complaint Fails To State A Claim For Breach Of Contract

The gravamen of Mr. Phillips' contract claims under Connecticut and New York law is that Merrill Lynch, through Mr. Perlin, made unsuitable investments on Mr. Phillips' behalf. (*See e.g.,* Compl. ¶¶ 22, 57 (alleging Merrill Lynch was contractually obligated to, but did not, make suitable investments)).  Mr. Phillips alleges that Merrill Lynch contractually undertook to "invest Plaintiff's funds prudently in accordance with his explicit investment objectives." (Compl. ¶ 56).  That purported agreement was allegedly breached by Merrill Lynch's failure to recommend conservative investments, "perform requisite due diligence," and by providing inaccurate information regarding investments.  (Compl. ¶¶ 57, 60).

Preliminarily, courts have recognized that the legal basis for claims such as Mr. Phillips' suitability claim is the federal securities laws, and not the common law.  *See, e.g., Dodds v. Cigna Securities, Inc.,* 12 F.3d 346, 351 (2d Cir. 1993) ("unsuitability claims [are] a distinct subset of Section 10(b) claims"); *Lehman Bros. Commercial Corp. v. Minmetals Intern. Non-Ferrous Metals Trading Co.,* 179 F. Supp. 2d 159, 166 (S.D.N.Y. 2001) ("[s]uitability fraud is a subset of a statutory 10(b) fraud claim" and is not independently actionable under common law tort theories);  *In the Matter of Aubrey O'Connor, et al.,* Administrative Proceeding File No. 3-9327, Initial Decision Release No. 193, 2001 SEC LEXIS 2047 (SEC 2001) (Sept. 28, 2001) (suitability claim is "a subset of an ordinary fraud claim brought under Section 10(b)").

With that legal backdrop, Mr. Phillips' attempt to plead his purported suitability claim as one for breach of contract aspires to fit a square peg in a round hole.  Necessarily, Mr. Phillips must allege that there existed a contract obligating Merrill Lynch to make such "suitable" investments and undertake such obligations.[6]  No such agreement, however, is properly alleged,

---

[6]   In Connecticut, the elements of a breach of contract action are "(1) the existence of a contract or agreement; (2) a breach of the contract or agreement; and (3) damages resulting from the breach. *Chem-Tek, Inc. v. General Motors Corp.,* 816 F. Supp. 123 (D. Conn. 1993); *O'Hara v. Connecticut,* 218 Conn. 628, 637, 590 A.2d 948 (1991). The plaintiff has the burden to prove each element by a preponderance of the evidence.  *Underkofler v. Community Health Care Plan, Inc.,* 1999 U.S. Dist. LEXIS 10515 (D.

and no such obligation may be implied as a matter of law.

Mr. Phillips loosely refers to a "Financial Services Agreement" entered into with Merrill Lynch in May, 1999. (Compl. ¶ 21). Mr. Phillips did enter into a written agreement with Merrill Lynch in May 1999, but the title was actually "Cash Management Account Agreement," referred to here as the "CMA," governed by New York law.[7] (attached as Ex. "E"). *Nowhere* in the CMA does Merrill Lynch undertake to perform *any* of the at-issue obligations asserted by Mr. Phillips.

To the extent that the Plaintiff asserts that such promise was *implied* by the relationship between the parties, courts have squarely held that no duty of providing suitable investment advice arises from the customer-broker relationship where the broker does not have discretionary authority over the account. As the Second Circuit held in *De Kwiatkowski v. Bear Stearns and Co., Inc.*, 306 F.3d 1293, 1308 (2d Cir. 2002):

> [T]he giving of advice is an unexceptional feature of the broker-client relationship. What little case law there is on the subject makes clear that giving advice on particular occasions does not alter the character of the relationship by triggering an ongoing duty to advise in the future (or between transactions) or to monitor all data potentially relevant to a customer's investment. *See, e.g., Caravan Mobile Home Sales, Inc. v. Lehman Bros. Kuhn Loeb, Inc.*, 769 F.2d 561, 567 (9th Cir. 1995) (securities broker had no duty to provide customer with information about stock after purchase was complete); *Leib v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 461 F. Supp. 951, 953 (E.D. Mich. 1978) (broker has no duty to keep nondiscretionary customer abreast of 'financial

---

Conn. June 17, 1999). Similarly, to prevail on a claim for breach of contract under New York law, a plaintiff must establish: (1) that an agreement existed between plaintiff and defendant; (2) what the respective obligations of the parties were; (3) performance of the contract by plaintiff; (4) breach by the defendant in failing to perform its obligations; and (5) damages. *See, e.g., Kimball Assoc., P.A. v. Homer Central School Dist.*, No. 00 Civ. 897, 2000 WL 1720751, at *3 (N.D.N.Y. Nov. 9, 2000) (*citing Eli Attia Architects v. Safra*, 1996 WL 480721, at *3 (S.D.N.Y. 1996)).

[7] "As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings. However, an exception to the general rule is that a 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citations omitted).

information which may affect his customer's portfolio or to inform his customer of developments which could influence his investments'); *Robinson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 337 F. Supp. 107, 112 (N.D. Ala. 1971) ("The broker has no duty to relay news of political, economic, weather or price changes to his principal, absent an express contract to furnish such information."); *Puckett v. Rufenacht, Bromagen & Hertz, Inc.*, 587 So. 2d 273, 280 (Miss. 1991) (the broker could not possibly perform such a duty); *Walston & Co. v. Miller*, 100 Ariz. 48, 410 P.2d 658, 661 (Ariz. 1966) (same).

*    *    *

A broker may be liable in tort (as noted above) for breach of a duty owed in respect of advice given. But if a broker had a broad duty to furnish a nondiscretionary customer with all advice and information relevant to an investment, then, as the Robinson court observed, the customer could recover damages 'merely by proving nontransmission of some fact which, he could testify with the wisdom of hindsight, would have affected his judgment had he learned of it.

The Plaintiff makes no allegation (because he cannot) that his account was a discretionary account. As a matter of law, there can be no *implied* obligation to provide suitable investment advice.

**B.    The Complaint Fails To State A Claim For "*Respondeat Superior*" (Negligence/Tort Based Liability**

This is a case involving a broker-customer relationship. (*See, e.g.*, Compl. ¶ 21). Mr. Phillips' purported tort based theory of liability must necessarily by predicated upon some form of generalized or continuous duty owing from Merrill Lynch to Mr. Phillips. But no such duty exists. Instead, the obligations of a broker dealer, like Merrill Lynch, are specific and limited to the execution of individual transactions. *See De Kwiatkowski*, 306 F.3d at 1302-107; *Press v. Chemical Investment Serv. Corp.*, 166 F.3d 529, 536 (2d Cir. 1999); *In re Dean Witter Managed Futures Ltd. Partnership Litig.*, 282 A.D.2d 271, 724 N.Y.S.2d 149, 151 (1st Dep't. 2001)

11

(affirming dismissal of breach of fiduciary duty claims where plaintiff failed to plead more than ordinary broker-client relationship); *Perl v. Smith Barney, Inc.*, 230 A.D.2d 664, 666, 646 N.Y.S. 2d 678, 680 (1st Dep't 1996) (broker does not, in the ordinary course of business, owe a fiduciary duty to a purchaser of securities); *Fekety v. Gruntal & Co., Inc.*, 191 A.D.2d 370, 595 N.Y.S.2d 190, 191 (1st Dep't 1993) (same).

As the Second Circuit in *De Kwiatkowski* recently held:

> We are aware of no authority for the view that, in the ordinary case, a broker may be held to an open-ended duty of reasonable care, to a nondiscretionary client, that would encompass anything more than limited transaction-by-transaction duties. Thus, in the ordinary nondiscretionary account the broker's failure to offer information and advice between transactions cannot constitute negligence.

*De Kwiatkowski*, 306 F.3d at 1306.

In *De Kwiatkowski*, a client sued his former brokerage firm for negligence and breach of fiduciary duty, alleging, among other things, that the brokerage firm gave him negligent advice. The court held:

> It is uncontested that a broker ordinarily has no duty to monitor a nondiscretionary account, or to give advice to such a customer on an ongoing basis. The broker's duties ordinarily end after each transaction is done, and thus do not include a duty to offer unsolicited information, advice, or warnings concerning the customer's investments. A nondiscretionary customer by definition keeps control over the account and has full responsibility for trading decisions. On a transaction-by-transaction basis, the broker owes duties of diligence and competence in executing the client's trade orders, and is obliged to give honest and complete information when recommending a purchase or sale. The client may enjoy the broker's advice and recommendations with respect to a given trade, but has no legal claim on the broker's ongoing attention.

Mr. Phillips has not alleged that his Merrill Lynch account was discretionary, (nor could he so allege). As such, there was no ongoing duty owed to Mr. Phillips by Merrill Lynch and the claim for tort based liability (*respondeat superior*) should be dismissed.

## III.    IF NOT DISMISSED, THIS ACTION SHOULD BE TRANSFERRED TO THE DISTRICT OF CONNECTICUT

"[F]or the convenience of the parties and the witnesses and in the interests of justice," 28 U.S.C. § 1404(a), this Court should transfer this second filed version of the Plaintiff's lawsuit to the District of Connecticut, where the Plaintiff's first-filed action is pending.[8]  Transferring this case to the District of Connecticut will fulfill the purpose of 28 U.S.C. § 1404(a), to prevent the waste of time, energy and money and protect litigants, witnesses and the public against unnecessary inconvenience and expense. *Van Dusen v. Barrack*, 376 U.S. 612 (1964). The transfer of this case to Connecticut satisfies the Third Circuit's non-exhaustive list of private and public interests governing a change of venue analysis in *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).[9]

---

[8]  The preliminary question in a motion to transfer under this section is whether the transferee district is one in which the action "might have been brought." *Minstar, Inc. v. Laborde,* 626 F. Supp. 142 (D. Del. 1985). As alleged in the Complaint, Merrill Lynch has its branch office implicated by the Complaint in Connecticut, and the Plaintiff lives in Old Saybrook, Connecticut. The first requirement for transfer is met.

[9] Under *Jumara*, the private interests include:
- The plaintiff's forum preference as manifested in the original choice and defendant's preference;
- Whether the claim arose elsewhere;
- The convenience of the parties as indicated by their relative physical and financial condition;
- The convenience of the witnesses to the extent that the witnesses may actually be unavailable for trial in one of the fora; and
- The location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

A.    **This Case Should Be Transferred To Connecticut Where Mr. Phillips' First-Brought Arbitration Against Merrill Lynch Is Pending**

Unquestionably, the Plaintiff should not be permitted to bring claims here in Delaware in a civil action when such claims *have already been arbitrated* in Connecticut and, pursuant to the Federal Arbitration Act, are now the subject of a petition to confirm the arbitration award. (*See* Ex. "C"). That proceeding is the final step in completing the resolution of the Plaintiff's complaints in an arbitral forum, a dispute resolution mechanism that is strongly favored by the federal judicial system. Plaintiffs' attempt to revive his claims through this litigation -- which would defeat the efficient resolution already obtained through agreed upon arbitration -- cannot be permitted.

"Congress has decreed that arbitration is a favored means of dispute resolution," *Seus v. John Nuveen & Co.*, 146 F.3d 175, 187 (3d Cir. 1998) and the United States Code specifically provides for federal court approval of arbitral awards. Indeed, the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA"), evinces a "strong presumption in favor of enforcing arbitration awards." *Wall Street Associates v. Becker Paribas Inc.*, 27 F.3d 845, 849 (2d Cir. 1994); *accord, Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S,* 333 F.3d 383, 388 (2d Cir. 2003) ("It is well established that courts must grant an arbitration panel's decision great deference.") In substance, this action is a second filed action, following Mr. Phillips' first filed arbitration in Connecticut, which is concluded subject only to the federal court's confirmation of the award.

---

55 F.3d 873 at 879 (citations omitted). *Accord, Tsoukanelis v. Country Pure Foods, Inc.*, 337 F. Supp. 2d 600 (D. Del. 2004). The public interests include:

- The enforceability of the judgment;
- The practical considerations that could make the trial easy, expeditious or inexpensive;
- The relative administrative difficulty in the two fora resulting from court congestion;
- The local interest in deciding local controversies at home;
- The public policies of the fora, and the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* (citations omitted).

To permit this action to proceed here would be the equivalent of permitting a plaintiff to institute a complaint anew when the same plaintiff had already lost in litigation involving the same complaint in another forum, with only the entry of judgment remaining in the first filed litigation.  This Court should not permit Mr. Phillips' attempted end run around the FAA.

In any event, where a plaintiff files successive actions in different courts, this Court has held that transfer is warranted to the first forum.  In *Airport Investors Ltd. P'ship v. Neatrour*, 2004 U.S. Dist. LEXIS 1391 (D. Del. Feb. 3, 2004), this Court in short order transferred a case to Pennsylvania, the district where the same plaintiff filed an action against the same defendants involving the same contract, three weeks prior.  In *Airport Investors*, a Maryland corporation (with its principal officer residing in Delaware) sought specific performance of its contract with a Pennsylvania corporation regarding a Pennsylvania radio station.  Ordering the transfer to Pennsylvania, this Court held:

> The litigation has virtually no connection to Delaware. No acts relating to the present dispute took place in Delaware, nor do the parties appear to maintain any facilities or documents in Delaware. In addition, both the present case and the case in the Middle District of Pennsylvania are in the relatively early stages of litigation.  Finally, any disparity in court congestion, to the extent there is any, is not so great as to weigh against transfer due to the action currently pending in the Middle District of Pennsylvania.

*Id.*, at *5.

So too here, and as explained below, this action has no connection whatsoever with Delaware, except for the fact that Merrill Lynch is incorporated here.  The remainder of the Court's analysis, applied here, militates in favor of transfer with even greater strength.  While the Plaintiff in *Airport Investors* was a resident of Delaware, here Mr. Phillips is a resident of *Connecticut.*  (*See* Compl. ¶ 1).  And while the Airport Investors' first filed action in Pennsylvania was still in the early stages of litigation, here Mr. Phillips' claims have been *arbitrated to conclusion* in Connecticut, subject only to the District of Connecticut confirming

the award and entering judgment. If this action is to proceed at all it should be transferred to Connecticut where it may be consolidated with Merrill Lynch's petition to confirm the arbitration award.

### B.   Transfer To The District Of Connecticut Satisfies The *Jumara* Analysis

The common sense public and private interest factors promulgated by the Third Circuit in *Jumara* for transferring a case to another District Court are easily satisfied here. Indeed, as the Plaintiff brought his first action against Merrill Lynch in Connecticut, based on virtually identical allegations, it would appear that the Plaintiff could not legitimately contest that Connecticut is the most logical and efficient forum for this second filed litigation. Both the Plaintiff and the principal third party witness, Mr. Perlin (formerly of Merrill Lynch) reside in Connecticut, as does Mr. Perlin's firm, Round Hill, where Mr. Phillips' went after leaving Merrill Lynch.

### 1.   Plaintiffs' Choice Of Forum Is Entitled To No Weight Here

Indisputably, the Plaintiff's *first* choice of forum was Connecticut, where he commenced his NASD arbitration. (Statement of Claim, Ex. "A"). Mr. Phillips' second filed action here in Delaware is *not* on his "home turf" -- he is a resident of Old Saybrook, Connecticut. (Compl. ¶ 1). This Court has frequently recognized that the usual "preference in favor of plaintiffs' choice of forum is not adopted blindly or without reason." *Clopay Corp. v. Newell Cos., Inc.*, 527 F. Supp. 733, 736 (D. Del. 1981); *accord Waste Distillation*, 775 F. Supp. at 764; *TCW/Camil Holding L.L.C. v. Fox Haron & Camerini LLP*, 2004 WL 1043193 (D. Del. Apr. 30, 2004) (citing *Burstein*). Rather, "[c]ourts expect that plaintiffs' choices will generally reflect their *rational* and *legitimate* concerns." *Id.* (emphasis added); *J-Squared Technologies, Inc. v.*

16

*Motorola, Inc.*, 2005 WL 388599, at *2 (D. Del. Feb. 2, 2005). In this case, however, Plaintiff's choice of litigating in Delaware serves no "rational" purpose, and in fact the reasons for bringing suit here are patently not "legitimate."

The Plaintiff is a resident of Connecticut, and as explained further below, the witnesses, and pertinent documents are located in Connecticut and New York and the substantive law governing this case is Connecticut and New York law. Saliently, Mr. Perlin, Merrill Lynch's *former* employee and the person alleged to have dealt with Mr. Phillips on Merrill Lynch's behalf, resides in Connecticut. As the Complaint is substantively levied at Mr. Perlin and his alleged statements and actions, the Plaintiff will be prevented from presenting any evidence via subpoena concerning statements made by Mr. Perlin. Fed. R. Civ. P. 45(c)(3)(A)(ii) (requiring a district court to quash or modify a subpoena if it requires a person from outside the state "who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed, or regularly transacts business in person. . . ."). Mr. Phillips' choice of Delaware bears no hallmark of rationality.[10]

Similarly, the Plaintiff's choice to bring this action in Delaware cannot be for any legitimate reason. Rather, with absolutely no connection to Delaware, the Plaintiff's choice of venue smacks of forum shopping. *Rumsfeld v. Padilla*, 542 U.S. 426, 463 (2004) ("Venue principles, however, center on the most convenient and efficient forum for resolution of a case, and on the placement most likely to minimize forum shopping by either party").

---

[10]   Defendant Merrill Lynch would prefer Connecticut for the same reasons that likely caused Phillips to initiate his original action (the arbitration) locally in Connecticut:  a forum local to the parties provides convenience to party witnesses, compelled availability by subpoena for non-party witnesses, and lower attorneys fees due to absence of a need for substantial travel time.

2.    **The Complaint Should Be Heard Where It Arose
By A Court Familiar With The Unique Issues Of
<u>Substantive State Law At Issue Here -- Connecticut</u>**

The events giving rise to the Plaintiff's purported claims occurred predominantly in New York and Connecticut. As alleged in the Complaint, Mr. Phillips had a few meetings with Mr. Perlin in New York City. (Compl. ¶ 27). During the time that Mr. Phillips was a Merrill Lynch client with Mr. Perlin servicing his account, account statements and information concerning his investments were sent to Mr. Phillips in Connecticut. (*See* Affidavit of Judy Monaghan ("Monaghan Aff.") ¶4). And while Mr. Perlin initially worked for Merrill Lynch out of New York City, he continued to service Mr. Phillips' account following his move to Round Hill Securities, Inc., located in Stamford, Connecticut.[11] (*See* Monaghan Aff. ¶¶ 6-7). Finally, Mr. Phillips commenced an arbitration against Merrill Lynch in Connecticut. (Ex. "A").

By contrast, none of the alleged events in the Complaint relate in any way to Delaware.

Moreover, this Court has recognized that there is a public interest in having local controversies decided locally. *Pennwalt v. Purex Industries, Inc.*, 659 F. Supp. 287, 291 (D. Del. 1986). Indeed, the Supreme Court has noted the propriety of "having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 509 (1947). The Complaint here includes claims for breach of contract under Connecticut law and tort claims governed by Connecticut law. The Complaint also contains a single count for breach of contract purportedly governed by New York law. Federal courts in Connecticut sitting in diversity obviously have strong familiarity with both

---

[11] While not material to this motion, in 2002, after the events at issue in the Complaint transpired, Mr. Phillips opened several new accounts with Merrill Lynch. These new accounts were located at different

Connecticut and New York law. No doubt, this Court would competently adjudicate the claims -
- but there is a local interest in having a Connecticut court do so here. As demonstrated by
Merrill Lynch's 12(b)(6) arguments above, the Complaint involves purported claims for breach
of contract that are in fact tort claims, subject to tort limitations periods. Accordingly, this case
does not involve run of the mill issues, but rather, involves significant issues concerning
substantive common law of the State of Connecticut. These issues should be decided by a Court
sitting in Connecticut.

> **3.    The Convenience Of The Parties And Witnesses
> And Practical Considerations For Trial (If There Ever
> Could Be One) Weighs Strongly in Favor of Transfer**

The current Merrill Lynch employees most familiar with the events giving rise to the
Plaintiff's purported claims reside and work in New York. (*See* Monaghan Aff. ¶9). For Merrill
Lynch's third party witnesses, Bridgeport, Connecticut is more convenient than Delaware, and
within subpoena power. Mr. Perlin, the former Merrill Lynch financial advisor that is the focus
of Mr. Phillips' accusations, works in Connecticut. (*See* Monaghan Aff. ¶6). All of the
documents relating to this case are maintained locally in either Connecticut (at Round Hill
Securities, Inc.) or at Merrill Lynch's offices in New York. (Monaghan Aff. ¶8).

Upon information and belief, the Plaintiff has no fact witnesses located in Delaware.
Similarly, since the Plaintiff does not appear to have any presence within Delaware, Merrill
Lynch doubts that the Plaintiff has any pertinent business records or other tangible evidence in
Delaware. Clearly, the center of gravity insofar as witnesses and documents are concerned is in
Connecticut, not Delaware.

---

Merrill Lynch offices in New York City and were serviced by a different broker.

Importantly, while the convenience of the third party witnesses is one of the most important factors in venue transfer analysis, *Ole K. Nilssen And Geo Foundation, Ltd. v. Osram Sylvania, Inc, and Osram Sylvania Products, Inc.*, 2001 U.S. Dist. LEXIS 25570, at *7 (D. Del. May 1, 2001) (citing *Mentor Graphics v. Quickturn Design Sys., Inc.*, 77 F. Supp. 2d 505, 510 (D. Del. 1999)), this is especially so with respect to third party witnesses who might attend only by compulsory process.  *3Com Corp. v. D-Link Sys.*, 2003 U.S. Dist. LEXIS 7120, at *5-6 (D. Del. April 25, 2003).  Notably, Mr. Perlin, the former Merrill Lynch financial advisor that is the subject of Mr. Phillips' entire complaint, works in Stamford, Connecticut.  (*See* Monaghan Aff. ¶6).  Mr. Perlin is not, however, subject to compulsory process in Delaware.

For the same reasons as discussed above, the trial of this matter -- if there ever could be one -- would be facilitated by a Connecticut forum.  The Connecticut and New York witnesses and documents are more easily accessible in Connecticut than Delaware.  Trial in Connecticut would avoid the expense of transportation and lodging for counsel and witnesses alike in Delaware.  The subpoena power of the District of Connecticut (in Bridgeport, approximately sixty (60) miles from New York City) would assure that Merrill Lynch is able to present its defense to a jury through Mr. Perlin's live testimony, in addition to witnesses working and residing in New York, as opposed to snippets of depositions.  The proximity of witnesses to Connecticut would obviate the possibility of having to grant continuances because a witness' flight to Delaware has been delayed or cancelled.  In short, there is *no* practical consideration that favors Delaware.

4.    <u>**Relative Court Congestion Weighs In Favor Of Transfer**</u>

The Federal Courts Management Statistics track the filing and disposition of actions in the Federal Court System and weights the caseloads on their dockets according to the complexity of the cases.  The comparable statistic is "weighted filings" per judge.  According to the 2004 statistics, judges in Delaware had an average of 534 weighted filings, whereas Connecticut judges averaged only 409 weighted filings.  Moreover, the median time from filing to disposition of all civil matters averaged 11.6 months in Connecticut, as compared to 14.0 months in Delaware.  (*See* Federal Court Management Statistics-2004, attached hereto as Ex. "F").  Thus, the prospect of obtaining an earlier resolution of this dispute in *Connecticut* rather than in Delaware is likely.

## CONCLUSION

For the foregoing reasons, Merrill Lynch respectfully requests that the Complaint be dismissed, with prejudice, or in the alternative, transferred to the District of Connecticut.

**DUANE MORRIS LLP**

/s/ Daniel V. Folt
Daniel V. Folt (Bar I.D. No. 3143)
Gary W. Lipkin (Bar I.D. No. 4044)
1100 N. Market St., 12th Floor
Wilmington, DE 19801
Tel: 302.657.4927
Fax: 302.657.4901

Of Counsel:

Timothy Burke
BINGHAM McCUTCHEN LLP
150 Federal Street
Boston, MA 02110-1726
617.951.8000
timothy.burke@bingham.com

Michael D. Blanchard
BINGHAM McCUTCHEN LLP
One State Street
Hartford, CT 06103-3178
860.240.2700
michael.blanchard@bingham.com

Dimitri Nemirovsky
BINGHAM McCUTCHEN LLP
399 Park Avenue
New York, NY 10022-4689
212.705.7000
dimitri.nemirovsky@bingham.com

Attorneys for Defendant
Merrill Lynch, Pierce, Fenner
& Smith Incorporated

WLM\213106.1

## CERTIFICATE OF SERVICE

I, Gary W. Lipkin, hereby certify that on December 29, 2005, I caused to be served a copy of "Defendant's Opening Brief In Support Of Its Motion To Dismiss Pursuant To Rule 12(b)(6), Or Transfer Venue Pursuant To 28 U.S.C.A. § 1404(a)" on the following counsel of record via e-filing:

Marc H. Snyder, Esq.
Frank Rosen Snyder & Moss, LLP
1813 Marsh Road, Suite D
Wilmington, DE 19810

/s/ Gary W. Lipkin (DE Bar I.D. No. 4044)

WLM\213107 1