# EXHIBIT "E"

*Detach and Return to Merrill Lynch*
**CMA® ACCOUNT APPLICATION AND AGREEMENT FORM**

350-07692
CMA® Account Number: Office Use

**TYPE OF ACCOUNT**
Indicate the type of CMA account you wish to open by checking the appropriate box:
☑ Single  ☐ Joint  ☐ UGMA/UTMA  ☐ Trust  ☐ Estate  ☐ Transfer on Death  ☐ Other _____

Will this account serve at this time as the master CMA account in the CMA Master Financial service?
☐ Yes  ☐ No

**ACCOUNT INFORMATION**
IAN S. PHILLIPS
(Primary Account Holder Name)           (Secondary Account Holder Name, if Joint Account)

33 WILSON AVENUE     ROWAYTON, CT     06855
Mailing Address: Street Address     City, State     Zip Code

**TAX REPORTING INFORMATION**
Check One:
☑ Social Security Number  ☐ Taxpayer Identification Number:
5 7 5 5 2 9 5 2 0

☐ Check here if you are subject to backup withholding due to notification by the IRS.
If so, you must also cross out the portion of the Tax Certification below as instructed.

**FOR JOINT ACCOUNTS ONLY**
If this is a joint account, your account will be titled as you indicate by checking the appropriate box below:
☐ JTWROS: Joint Account with Right of Survivorship
☐ TIC: Joint Account without Right of Survivorship, also known as Tenants in Common
☐ ATBE: As Tenants by Entirety (for married persons, only in states where applicable)
☐ COMMPROP: Community Property (for married persons, only in states where applicable)
☐ Other Tenancy Designation (Specify): _____

**INVESTOR CREDITLINE® SERVICE**
Your CMA account will be established with the Investor CreditLine service unless you check the box below.
☐ Check here if you DO NOT want the Investor CreditLine service.

**CMA® VISA® PROGRAM SELECTION**
Visa Account
☐ CMA® Visa® Signature℠ Program (optional)*
☐ CMA Visa Gold Program (optional)*
☐ CMA Classic Visa Card                    *Requires a routine credit check.

**PRIMARY MONEY ACCOUNT SELECTION**
Indicate your choice for your Primary Money Account as number 1 below. You may also designate the remaining Money Accounts as choices 2, 3, 4, etc., if you wish Money Account balances to be automatically redeemed or withdrawn in that order.
☑ CMA Money Fund                    ☐ CMA Treasury Fund
☐ CMA Tax-Exempt Fund               ☐ Insured Savings℠ Account
☐ CMA Government Securities Fund    ☐ Other: _____
                                     Indicate name of Money Account
☐ CMA Municipal Money Fund (circle one):
AZ, CA, CT, MA, MI, NJ, NY, NC, OH, PA

**CMA ACCOUNT AGREEMENT**
By signing below, I hereby apply for the Cash Management Account® financial service ("CMA® Service") and I consent and agree to all of the terms and conditions of the attached Cash Management Account Agreement (the "Agreement"), which is incorporated herein by reference. I acknowledge that I have read the Agreement and will retain my copy for my records.
I further acknowledge and agree that the Agreement will govern all aspects of the CMA Service provided by or through you, including all transactions in my CMA account and all transfers between it and any CMA SubAccounts that I consent to be linked to it, as well as, if applicable, the CMA Money Funds, the Insured Savings Account, any CMA checks and/or Visa card(s) issued for my account, the Investor CreditLine service, and any optional CMA services to which I may subscribe now or in the future.

**TAX CERTIFICATION**
I certify, as the "Primary Account Holder" signing below and under penalties of perjury: (1) that the taxpayer identification number above is my correct taxpayer identification number and (2) that I am not subject to backup withholding either because I have not been notified by the IRS that I am subject to backup withholding as a result of a failure to report all interest and dividends, or the IRS has notified me that I am no longer subject to backup withholding. I understand that I must cross out item (2) above if I have been notified by the IRS that I am subject to backup withholding because of underreporting of interest or dividends on my tax return, unless after being so notified, I have received another notice from the IRS that I am no longer subject to backup withholding.

BY SIGNING BELOW, I ACKNOWLEDGE:
1. THAT IN ACCORDANCE WITH PARAGRAPH 10 OF THE AGREEMENT I AM AGREEING IN ADVANCE TO ARBITRATE ANY CONTROVERSIES WHICH MAY ARISE WITH YOU;
2. IF MY ACCOUNT IS ESTABLISHED WITH THE INVESTOR CREDITLINE SERVICE, THAT PURSUANT TO PARAGRAPH 24 OF THE AGREEMENT CERTAIN OF MY SECURITIES MAY BE LOANED TO YOU OR LOANED OUT TO OTHERS; AND
3. RECEIPT OF A COPY OF THE ATTACHED AGREEMENT FORM, CONSISTING OF 34 NUMBERED PARAGRAPHS AS OF THIS DATE.
4. THE INTERNAL REVENUE SERVICE DOES NOT REQUIRE MY CONSENT TO ANY PROVISION OF THIS DOCUMENT OTHER THAN THE CERTIFICATIONS REQUIRED TO AVOID BACKUP WITHHOLDING.

**Sign Here**
X  Ian Phillips                        5/25/99
Signature (Primary Account Holder)     Date     Title (For Special Accounts, e.g., Trustee)

X _____
Signature (Secondary Account Holder, if Joint Account)     Date     Title (For Special Accounts, e.g., Co-trustee)

**OFFICE USE:**
Financial Consultant Number
☐ Cash to Investor CreditLine
Office Manager Approval: _____

**Financial Consultant Copy**
*Detach and Return to Merrill Lynch*

Code #10039-0998



THE MERRILL LYNCH CMA® ACCOUNT
APPLICATION AND AGREEMENT FORM

IMPORTANT:

*If you wish to open a CMA® account, please complete this form.*

- *If you wish to open a CMA account and participate in the CMA Master Financial℠ service by opening one or more CMA SubAccounts℠, you must complete this form and one or more blue CMA SubAccount Application and Agreement forms. Your Financial Consultant can provide additional forms, if necessary.*

- *If you already have a CMA account and wish to add one or more CMA SubAccounts in order to participate in the CMA Master Financial service, DO NOT complete this form. Complete only a blue CMA SubAccount Application and Agreement form for each CMA SubAccount you wish to open*





## INSTRUCTIONS

**TYPE OF ACCOUNT**

Please check the appropriate box for the type of CMA account you wish to open. Your Financial Consultant can answer any questions you may have.

**ACCOUNT INFORMATION**

Please print the names of all account holders. The term "Primary Account Holder" is used here only to identify the account holder whose Social Security/Taxpayer Identification Number will be used for tax reporting purposes. Please print your address; note, this is the address to which your monthly account statements will be mailed.

You may elect to participate in the CMA® Master Financial℠ service by opening any number of CMA SubAccounts℠ in addition to this CMA account. For information about the CMA Master Financial service and CMA SubAccounts, please refer to the CMA® booklet, or ask your Financial Consultant.

If you elect at this time to have this account serve as a master CMA account in the CMA Master Financial service, please be sure also to complete a CMA SubAccount Application and Agreement form for each CMA SubAccount.

For UGMA/UTMA accounts, the Account Information section (Primary Account Holder) should be completed as follows: "John Doe Cust for Mary Doe UGMA (or UTMA)".

**TAX REPORTING INFORMATION**

Please check either the Social Security number or Taxpayer Identification Number box and provide that number for the Primary Account Holder.* If you are NOT a U.S. citizen, a U.S. resident for tax purposes or other U.S. person, you must execute a Certificate of Foreign Status and Reduced Rate, Form W-8/1001. If Social Security number or Taxpayer Identification Number applied for, use Form W-9. Your Financial Consultant can provide you with the appropriate forms, if necessary.

*For UGMA/UTMA accounts, the child's Social Security number must be used

**FOR JOINT ACCOUNTS ONLY**

Joint ownership of property is an important part of your estate planning and entails important legal and tax consequences. Please consult your attorney if you have any questions about your joint account ownership choice.

NOTE: Nonresident aliens who elect to maintain a joint account agree in the CMA Account Agreement that the account will be governed by New York law.

**INVESTOR CREDITLINE SERVICE**

The Investor CreditLine® service allows suitable investors to borrow against the value of the eligible securities in their accounts. Check the box only in you DO NOT wish to establish your account with this service. Please note: If multiple accounts are opened in the same name, only one account may be established with the Investor CreditLine service. Also, certain account ownerships such as UGMA/UTMA accounts, accounts for certain trusts, and CMA Accounts for Estates are not eligible for participation in this service.

**CMA VISA PROGRAM SELECTION**

Please choose only one Visa® option, Signature, Gold or Classic, for your account. Certain accounts (e.g., UGMA/UTMA accounts, accounts for testamentary trusts, accounts for those trusts that do not authorize trustees to act independently, and CMA Account for Estates) are not eligible to receive Visa cards. For more information about the CMA Visa options, please refer to the CMA booklet or speak with your Financial Consultant. Please be sure to complete the Visa instructions section on the reverse side of the Application and Agreement form.

**PRIMARY MONEY ACCOUNT SELECTION**

Select one of the CMA Money Accounts as your Primary Money Account. Your free credit balances will be automatically invested or deposited into the Money Account you indicate as number 1.

You may change your Primary Money Account selection at any time simply by notifying your Financial Consultant. For more information about these Money Accounts, including making manual investments, please refer to the CMA booklet or speak with your Financial Consultant.

**CMA ACCOUNT AGREEMENT**

Please read the CMA Account Agreement carefully and be sure that each account holder signs and dates the form. Be sure to include titles, such as Trustee, Custodian or Executor, with your signature where appropriate (e.g., John Doe, Trustee). Be sure also to complete the reverse side of the Application and Agreement form so that your check and, if applicable, Visa information can be processed properly.

Please return only the Client Account Services copy and Financial Consultant copy to your Financial Consultant. Keep the rest of this form for your records.

## CASH MANAGEMENT ACCOUNT* AGREEMENT

**INTRODUCTION**
This Agreement contains the terms governing the Cash Management Account* financial service ("CMA* Service") I will read this Agreement and keep it for my records because I know that by signing the CMA Application and Agreement form or the CMA SubAccount* Application and Agreement form (the "Application and Agreement form(s)") I am agreeing to its terms

**DEFINITION**
In this Agreement, "I," "me," "my" or "accountholder" means each person who signs the CMA Application and Agreement form or the CMA SubAccount Application and Agreement form. "You," "your" or "MLPF&S" means Merrill Lynch, Pierce, Fenner & Smith Incorporated. "MLB&T" means Merrill Lynch Bank & Trust Co. "BANK ONE" means BANK ONE, COLUMBUS, N.A. "MLBANK USA" means Merrill Lynch Bank USA. "CHASE" means the Chase Manhattan Bank, N.A. MLB&T, MLBANK USA, CHASE and BANK ONE are referred to collectively as "Banks." The "Issuer" means MLB&T or MLBANK USA, whichever issues the Visa Cards from time to time.

"Card/Check Account" means the account(s) established for me by the Banks. "Checks" means checks issued to me by BANK ONE for use with my Card/Check Account. "Card" or "Cards" means one or more Classic Visa* cards issued to me for use with my Card/Check Account. Unless the context requires otherwise, "Card" or "Cards" also means one or more CMA* Visa* Gold Program or CMA Visa* Signature* cards issued to me for use with my Card/Check Account if I subscribe to and am approved for the CMA Visa Gold Program or the CMA Visa Signature Program. The name of the Issuer will appear on the Card. The Card(s) issued to me if I subscribe to the CMA Visa Gold Program or the CMA Visa Signature Program will also be referred to as the "Visa Gold Program Card(s)" or the "Visa Signature Program Card(s)." "Money Funds" means the CMA money market funds. "Money Accounts" means the Money Funds and any FDIC-insured money market deposit accounts opened for me through the Insured Savings℠ Account.

For purposes of this Agreement, "securities and other property" means, but is not limited to, money, securities, financial instruments and commodities of every kind of nature and related contracts and options. This definition includes securities or other property currently or hereafter held, carried or maintained by you or by any of your affiliates, in your possession and control, or in the possession and control of any such affiliate, for any purpose, in and for any of my accounts now or hereafter opened, including any account in which I may have an interest.

**DESCRIPTION OF THE CMA* SERVICE**
1. The CMA Service consists of: (1) an MLPF&S securities account (referred to as the "Securities Account"), which is either a cash account, or with the Investor CreditLine* service, a margin account, (2) a choice of Money Accounts, (3) if applicable, a Card/Check Account provided by the Banks and (4) if applicable, optional CMA services as described in the Cash Management Account Program Description.

**DESCRIPTION OF THE CMA MASTER FINANCIAL℠ SERVICE**
2. The CMA Master Financial℠ service consists of: (1) a master account ("Master CMA Account") established with the full CMA Service as described above and (2) one or more related CMA SubAccounts established by or with the consent of a Master CMA Accountholder. Each CMA SubAccount is entitled to partial CMA service consisting of: (1) a Securities Account, which is either a cash account or, with the Investor CreditLine service, a margin account, (2) a choice of Money Accounts and (3) optional CMA services to the extent eligible. A CMA SubAccount is not eligible for a Card/Check Account.

**CMA SUBACCOUNT℠ AUTHORIZATIONS**
3. By signing the CMA SubAccount Application and Agreement form, each CMA SubAccountholder designates the Master CMA Accountholder as his or her agent for the purpose of receiving monthly CMA account statements and any notices or other communications and authorizes MLPF&S to mail them to the address designated by the Master CMA Accountholder from time to time. If applicable, each CMA SubAccountholder also authorizes MLPF&S (subject to account eligibility requirements) to accept telephonic instructions from the Master CMA Accountholder for the transfer of funds through the Funds Transfer Service to such CMA SubAccount from the Master CMA Account and/or from such CMA SubAccount to the Master CMA Account, as selected in the CMA SubAccount Application and Agreement form. In the Event any erroneous transfers are made, the Master CMA Accountholder and the CMA SubAccountholder authorize MLPF&S to initiate appropriate corrections. The foregoing authorizations shall remain in full force and effect until written notice of revocation is delivered to MLPF&S, after which the CMA SubAccount shall remain subject to the terms of this Agreement to the extent it receives the CMA Service in accordance with the policies of MLPF&S.

**AGREEMENT REGARDING CASH, MONEY ACCOUNT BALANCES AND OTHER ASSETS AND FEES**
4. Available free credit balances in my Securities Account will automatically be invested or deposited at least once a week into the Money Account that I have designated as my Primary Money Account. I understand that you may reasonably withhold access to my Money Account balances until you are satisfied that checks credited to my Securities Account have been collected. You may satisfy amounts that I owe in connection with my CMA Service account (such as debit balances in the Securities Account, amounts owing in my Card/Check Account, or investments or deposits made for me that are later reversed), from the assets in my Money Accounts (including funds obtained by redeeming Money Funds shares) or from my Securities Account (including, if applicable, by making loans to me). Certain fees, including an annual fee, which are subject to change, will be charged to my account for the financial services provided to me.

**REPRESENTATIONS, ADDITIONAL TERMS AND AMENDMENTS**
5. I have received a copy of the Money Funds' prospectuses, the Insured Savings Account Fact Sheet and the Cash Management Account Program Description. These documents shall be referred to in this Agreement as the "Documents." The Documents contain additional terms governing the CMA Service. I agree that these Documents are incorporated into this Agreement as though they were fully set out in this Agreement. Subject to applicable law, you and the Banks also have the right to amend the Documents by so notifying me in writing. Unless the context otherwise requires, the term "Agreement" shall include the Documents as amended from time to time.

I agree that you and the Banks shall have the right to amend this Agreement, by modifying or rescinding any of its existing provisions or by adding any new provision, at any time by sending notice of the amendment to me. Any such amendment shall be effective as of a date to be established by you and the Banks, subject to applicable law.

I understand there may be additional documentation required by applicable law or the policies and procedures of MLPF&S or the Banks. I agree to promptly comply with any such requests for additional documents.

**HEADINGS ARE DESCRIPTIVE**
6. The heading of each provision of this Agreement is for descriptive purposes only and shall not be deemed to modify or qualify any of the rights or obligations set forth in each such provision.

**JOINT ACCOUNTS AND JOINT AND SEVERAL LIABILITY**
7. If more than one person signs this Agreement, each person shall be an accountholder and their obligations under this Agreement shall be joint and several. The legal ownership of the account shall be in such form as the accountholders shall designate in the Application and Agreement form and as reflected in the account title. In the event no designation is made, MLPF&S is authorized to deal with the accountholders as tenants in common (without right of survivorship).

Notwithstanding the choice of law provisions of Paragraph 11, which shall govern the contractual obligations of the parties under this Agreement, the legal ownership of the account shall be governed by and interpreted under the internal laws of the state of permanent residence of accountholders who are U.S. citizens. Non-resident aliens agree that the form of joint ownership designated for the account shall be governed (notwithstanding the laws of any other jurisdiction to the contrary) by the internal laws of the State of New York and, for purposes of determining all matters with regard to the account, agree to submit to the jurisdiction of the courts of New York and the Federal Courts in the Southern District of New York and consent to service of process by certified mail to the account's address of record.

All accountholders agree that each accountholder has authority to transact any business on behalf of the account as fully and completely as if each accountholder were the sole owner of the account. Subject to MLPF&S policies, MLPF&S may accept orders and instructions, written or oral, with respect to the account from each accountholder, without notice to any other accountholder, for the receipt, transfer and withdrawal of funds by check, wire transfer or otherwise and for the purchase, sale, exchange, transfer or other disposition of securities and other property (with or without consideration), including, but not limited to, checks drawn to, or transfers made directly to the accountholder requesting the check or transfer and/or to third parties. MLPF&S reserves the right to require joint instructions by all accountholders or a court order at any time with regard to the transfer of funds and securities. If the accountholders have selected the Investor CreditLine service, all accountholders further agree that all securities and other property that MLPF&S may be holding for any of them, either in this account or otherwise, shall be subject to a lien for the discharge of the obligations of this account to MLPF&S, such lien to be in addition to any rights and remedies MLPF&S may otherwise have.

In the event of the death of an accountholder, divorce of married accountholders, assignment of an accountholder's interest or other event that causes a change in ownership of the account, all accountholders or the surviving accountholder(s) as the case may be shall immediately give MLPF&S written notice thereof, and MLPF&S may, in such event, take such action, including requiring such documents or imposing such restrictions on the account, as MLPF&S may deem necessary in the circumstances. The estate of a deceased accountholder and a departing accountholder by assignment or divorce shall remain liable, jointly and severally, with the remaining or surviving accountholder(s), for any obligations of the account arising before MLPF&S receives such notice, or incurred in liquidation of the account or the adjustment of the interests of the accountholders.

In the event of any such change in ownership of the account, MLPF&S is authorized to divide or retitle the account in accordance with the form of legal ownership of the account as reflected on the records of MLPF&S, or by written instructions of the remaining or surviving accountholder(s), or by obtaining a court order, as MLPF&S may reasonably determine is appropriate in the circumstances. Unless agreed otherwise among the accountholders in a writing provided to MLPF&S, joint accounts designated "with right of survivorship" (e.g., JTWROS) shall vest the interest of a deceased accountholder in the surviving accountholder(s) and accounts designated "without right of survivorship" (e.g., TIC) shall entitle the estate of a deceased accountholder and the surviving accountholder(s) to equal shares of the account. All accountholders agree to indemnify MLPF&S against any liability, loss or expense incurred from acting in accordance with this Agreement in the event of a change in ownership of the account.

All statements, notices or other communications sent or given to one accountholder by MLPF&S shall be considered notice to all accountholders. In the event MLPF&S receives inconsistent instructions from two or more accountholders, reasonably believes instructions received from one accountholder are not mutually agreeable to all accountholders, or receives a court order with respect to the account, MLPF&S may, but is not obligated to, restrict activity in the account, require that all instructions be in writing signed by all accountholders, suspend or terminate the CMA Service and/or file an interpleader action in an appropriate court at the expense of the accountholders

**TERMINATION OF THE CMA SERVICE**
8. The Banks, you or I may terminate my subscription to the CMA Service, including the use of my Checks or Cards, if applicable, at any time. I shall remain responsible for authorized charges which arise before or after termination.

If my subscription is terminated, you may redeem all my Money Fund shares and, unless I advise you otherwise, withdraw all my Money Account deposit balances. Also, I shall promptly return all unused Checks and any Cards to you or the Banks. My failure to do so may result in a delay in your complying with my instructions regarding the disposition of my assets with you.

**CREDIT INFORMATION**
9. I authorize you, each of your affiliates, and the Banks, to request a consumer report about me from one or more consumer reporting agencies for the purposes of considering my subscription to the CMA Service, reviewing or collecting any account opened for me, or for any other legitimate business purpose. Upon my request, you will inform me of the name and address of each consumer reporting agency from which you obtained a consumer report, if any, in connection with my subscription or account. I also authorize you, each of your affiliates, and the Banks to share any information you may have or obtain about me for any legitimate business purpose.

**AGREEMENT TO ARBITRATE CONTROVERSIES WITH MLPF&S**
10. • Arbitration is final and binding on the parties.
  • The parties are waiving their right to seek remedies in court, including the right to jury trial.
  • Pre-arbitration discovery is generally more limited than and different from court proceedings.
  • The arbitrators' award is not required to include factual findings or legal reasoning and any party's right to appeal or to seek modification of rulings by the arbitrators is strictly limited.
  • The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.

I agree that all controversies which may arise between us, including but not limited to those involving any transaction or the construction, performance, or breach of this or any other agreement between us, whether entered into prior, on or subsequent to the date hereof, shall be determined by arbitration. Any arbitration under this Agreement shall be conducted only before the New York Stock Exchange, Inc., the American Stock Exchange, Inc., or an arbitration facility provided by any other exchange, the National Association of Securities Dealers, Inc., or the Municipal Securities Rulemaking Board, and in accordance with its arbitration rules then in force. I may elect in the first instance whether arbitration shall be conducted before the New York Stock Exchange, Inc., the American Stock Exchange, Inc., other exchanges, the National Association of Securities Dealers, Inc., or the Municipal Securities Rulemaking Board, but if I fail to make such election, by registered letter or telegram addressed to you at the office where I maintain my account, before the expiration of five days after receipt of a written request from you to make such election, then you may make such election. Judgment upon the award of the arbitrators may be entered in any court, state or federal, having jurisdiction.

No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (i) the class certification is denied; (ii) the class is decertified; or (iii) the customer is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this Agreement to the extent stated herein.

Code #10039-0998

**Client Copy
Retain For Your Records
Do Not Return to Merrill Lynch**

# CASH MANAGEMENT ACCOUNT AGREEMENT

### APPLICABLE LAWS
11. This Agreement, with respect to all portions of the CMA Service, including interest charges on loans you may make to me, will be governed by and interpreted under the laws of the State of New York. The terms of my agreement with MLB&T are governed by federal and New Jersey law. The terms of my agreement with MLBANK USA are governed by federal law and Utah law. The terms of my agreement with CHASE, including those relating to finance charges on overdrafts, are governed by federal and New York law. The terms of my agreement with BANK ONE are governed by Ohio law.

### PRESUMPTION OF RECEIPT OF COMMUNICATIONS
12. Communications may be sent to me at my address or at such other address as I give you in writing. All communications so sent, whether by mail, telegraph, messenger or otherwise, will be considered to have been given to me personally upon such sending, whether or not I actually receive them.

### EXTRAORDINARY EVENTS
13. I agree that you and the Banks shall not be liable for loss caused directly or indirectly by government restrictions, exchange or market rulings, suspension of trading, war, strikes or other conditions beyond your and the Banks' control.

### SEPARABILITY
14. If any provision of this Agreement is held to be invalid, illegal, void or unenforceable, by reason of any law, rule, administrative order or judicial decision, such determination will not affect the validity of the remaining provisions of this Agreement.

### LIABILITY FOR COSTS OF COLLECTION
15. To the extent permitted by the laws of the State of New York, I agree to pay you the reasonable costs and expenses of collection including attorneys' fees, for any debit balance and any unpaid deficiency, that I owe.

### APPLICABLE RULES AND REGULATIONS
16. All transactions in my Securities Account shall be subject to the constitution, rules, regulations, customs and usages of the exchange or market and its clearing house, if any, on which such transactions are executed by you or your agents including your subsidiaries and affiliates.

Paragraphs 17 through 25 below apply only if I request that my Securities Account be established with the Investor CreditLine service.

### COLLATERAL REQUIREMENTS AND CREDIT CHARGES
17. I will maintain such securities and other property in my accounts as you shall require from time to time. In accordance with your usual custom, the monthly debit balance of such accounts shall be charged interest at a rate permitted by the laws of the State of New York. Unless I pay the interest charged to my Securities Account at the close of a charge period, it will be added to the opening balance for the next charge period. Interest will then be charged upon the entire opening balance of that next charge period which will, therefore, include any such unpaid interest from the previous charge period.

### CALLS FOR ADDITIONAL COLLATERAL-LIQUIDATION RIGHTS
18. a. You shall have the right to require additional collateral:

(1) in accordance with your general policies regarding your maintenance requirements for the Investor CreditLine service, as such may be modified, amended or supplemented from time to time; or

(2) if in your discretion you consider it necessary for your protection at an earlier or later point in time than called for by said general policies; or

(3) in the event that a petition in bankruptcy or for appointment of a receiver is filed by or against me; or

(4) if an attachment is levied against my accounts; or

(5) in the event of my death.

b. If I do not provide you with additional collateral as you may require in accordance with (a) (1) or (2), or should an event described in (a) (3), (4) or (5) occur (whether or not you elect to require additional collateral), you shall have the right:

(1) to sell any or all securities and other property in my accounts with you or with any of your affiliates, whether carried individually or jointly with others;

(2) to buy any or all securities and other property which may be short in such accounts; and

(3) to cancel any open orders and to close any or all outstanding contracts.

You may exercise any or all of your rights under (b)(1), (2) or (3) without further demand for additional collateral, or notice of sale or purchase, or other notice or advertisement. Any such sales or purchases may be made at your discretion on any exchange or other market where such business is usually transacted, or at public auction or private sale, and you may be the purchaser for your own account. I understand that your giving of any prior demand or call or prior notice of the time and place of such sale or purchase shall not be considered a waiver of your right to sell or buy without any such demand, call or notice as provided in this Agreement.

### PURPOSE OF CREDIT
19. I understand and agree that any credit extended by you to me in connection with my Securities Account is primarily for investment or business purposes.

### REPRESENTATIONS AS TO BENEFICIAL OWNERSHIP AND CONTROL
20. I represent that, with respect to securities against which credit is or may be extended by you: (a) I am not the beneficial owner of more than three percent (3%) of the number of outstanding shares of any class of equity securities, and (b) I do not control, am not controlled by

Code #10039-0998

and am not under common control with the issuer of any such securities. In the event that any of the foregoing representations is inaccurate or becomes inaccurate, I will promptly so advise you in writing.

### SECURITY INTEREST IN FAVOR OF MLPF&S
21. All securities and other property shall be subject to a lien for the discharge of all my indebtedness and any other obligations that I may owe to you, and are to be held by you as security for the payment of any such obligations or indebtedness to you in any account you maintain for me, including any accounts in which I may have an interest. You shall have the right to transfer securities and other property so held by you from or to any other of such accounts whenever in your judgment you consider such a transfer necessary for your protection. In enforcing your lien, you shall have the discretion to determine which securities and property are to be sold and which contracts are to be closed.

### PAYMENT OF INDEBTEDNESS UPON DEMAND
22. I shall at all times be liable for the payment upon demand of any debit balance or other obligations owing in any of my accounts with you. I shall be liable to you for any deficiency remaining in any such accounts in event of the liquidation thereof, in whole or in part, by you or by me. I will pay such obligations and indebtedness upon demand.

### PLEDGE OF SECURITIES AND OTHER PROPERTY
23. Within the limitations imposed by applicable laws, rules and regulations, all securities and other property may be pledged and repledged by you from time to time, without notice to me, either separately or in common with other such securities and other property, for any amount due in my accounts, or for any greater amount. You may do so without retaining in your possession or under your control for delivery a like amount of similar securities or other property.

### LENDING AGREEMENT
24. In return for your extension or maintenance of any credit in my account, I acknowledge and agree that the securities in my account, together with all attendant rights of ownership, may be lent to you or lent out to others to the extent not prohibited by applicable laws, rules and regulations. In connection with such securities loans, you may receive and retain certain benefits to which I will not be entitled. I understand that, in certain circumstances, such loans could limit my ability to exercise voting rights, in whole or part, with respect to the securities lent.

### REPRESENTATION AS TO CAPACITY TO ENTER INTO AGREEMENT
25. I represent that no one except the person(s) signing this Agreement has an interest in my account or accounts with you. If a natural person, I represent that I am of full age, am not an employee of any exchange, nor of any corporation of which any exchange owns a majority of the capital stock, nor of a member of any exchange, nor of a member firm or member corporation registered on any exchange, nor of a bank, trust company, insurance company or any corporation, firm or individual engaged in the business of dealing either as broker or as principal in securities, bills of exchange, acceptances or other forms of commercial paper. If any of the foregoing representations is inaccurate or becomes inaccurate, I will promptly so advise you in writing.

Paragraphs 26 through 34 below do not apply to CMA SubAccounts.

Paragraphs 26 through 31 below apply only when the Car/Check Account is used, including when Checks and/or Cards are obtained.

### CARD OWNERSHIP
26. I certify that all information I have provided in the CMA Application and Agreement, including in the CMA Check and Visa Information form, is true and correct and that you and the Banks may rely on and verify such information.

The Card remains the property of the issuer and may be canceled by the issuer at any time without prior notice.

### LIABILITY
27. I will be liable for all authorized transactions arising through the use of the Card(s) and checks in connection with my Card/Check Account. I will be responsible, on a continuing basis, for the safekeeping of my Card(s) and Checks and shall not permit unauthorized persons to have access to my Card(s) or Checks. I will also be responsible for reviewing my CMA Monthly Statement in order to discover and report to MLPF&S the possible unauthorized use of my Card(s) and Checks. I agree to notify MLPF&S immediately if I believe or have reason to believe that my Card(s) or Checks have been or may be used by an unauthorized person. Unless limited by law, I will be responsible for any and all losses and damages that arise from any breach of my undertakings to safeguard my Card(s) and Checks, in review my CMA Monthly Statement for possible unauthorized activity and to promptly report such to MLPF&S.

I also agree to pay the reasonable costs and expenses of collection of any unpaid balance due, including any accrued finance charges, as a result of any overdraft(s), including but not limited to attorneys' fees, to the extent allowed by law, involved in such collection. I understand that the Banks have not taken a security interest in any of the assets in my Securities Account or Money Accounts pursuant to this Agreement.

### PURCHASING POWER
28. I agree that I will not incur charges to my Card/Check Account in excess of my Purchasing Power. The Purchasing Power for my Card/Check Account will be the total of any available free credit balance in my Securities Account, the available balances in my Money Accounts, and, if applicable, the available loan value of my securities in my Securities Account. I understand that my Purchasing Power may fluctuate from day to day.

### TRANSACTIONS EXCEEDING PURCHASING POWER
29. I understand that I will be in default if I incur charges in my Card/Check Account that exceed my Purchasing Power. If I am in default, you may, among other things, terminate my subscription to the CMA Service. If I exceed my Purchasing Power, CHASE may accept the transaction amount exceeding my Purchasing Power as an overdraft, and advance funds to you or the Banks in the amount exceeding my Purchasing Power. If CHASE does so, I will be notified and I agree that I will immediately pay CHASE the amount of the overdraft and any applicable finance charge which is computed as described in this section.

In each overdraft statement cycle, finance charges are figured by applying a Daily Periodic Rate to the Average Daily Balance of overdrafts and by multiplying the resulting figure by the number of days in the statement cycle. The Average Daily Balance of overdrafts is calculated each day by starting with the beginning balance of amounts I owe, adding any new overdrafts and subtracting any payments or credits received that day and unpaid finance charges. This gives CHASE the daily balance of overdrafts. The Average Daily Balance is calculated by adding all of the daily balances of overdrafts in that statement cycle and dividing the total by the number of days in the overdraft statement cycle. The Daily Periodic Rate that is applied is disclosed in the Cash Management Account Program Description and is subject to change upon notice. Finance charges accrue from the date CHASE accepts an overdraft until the date payment is made.

Any payments that I make will be applied, as of the date of receipt by CHASE, first to any accrued and unpaid finance charges and then to the balance of overdrafts in the order in which they were incurred.

### OVERDRAFT NOTICES
30. If CHASE extends an overdraft to me, I will be notified in writing. The initial overdraft notice will inform me of the overdraft(s), which is due and payable by me immediately, together with any accrued finance charges. Subsequent overdraft notices from CHASE will detail, among other disclosures, any overdraft(s) plus finance charges imposed on such overdraft(s), payments and credits and the balance due.

### ACCOUNT INQUIRIES
31. I understand that inquiries and error allegations concerning my Card/Check Account, any overdraft notices and my monthly statement should be directed through MLPF&S.

Paragraphs 32 through 34 below apply only if I subscribe to the CMA Visa Gold Program or the CMA Visa Signature Program.

### AGREEMENT TO THE CMA VISA GOLD PROGRAM AND THE CMA VISA SIGNATURE PROGRAM
32. In addition to the following paragraphs, I understand that paragraphs 1 through 16, 26 through 31 and, if my account is established with the Investor CreditLine service, 17 through 25 also apply to the CMA Visa Gold Program and the CMA Visa Signature Program.

In the event I am applying for the CMA Visa Gold Program or the CMA Visa Signature Program but I am not approved for participation in that program, I apply for and authorize the issuance of one or more Classic Visa cards and checks for use with my CMA account. In addition, if upon expiration of the Visa Gold or Visa Signature Program Card(s) issued to me, I do not qualify for reissue of such Card(s), I apply for and authorize the issuance of Classic Visa Card(s) and Checks. If a Classic Visa Card(s) and Checks are issued to me, I understand that this Agreement, with the exception of paragraphs 32 through 34 remain in full force and effect.

### LIMITATIONS AND DIRECT DEBITING OF MY ACCOUNT
33. I agree to pay MLBANK USA for the Card purchases posted to my Card/Check Account. I authorize MLPF&S to pay MLBANK USA from the assets in my Money Accounts (including by redeeming Money Fund shares or withdrawing ISA account balances, if any), and/or from my Securities Account (including, if applicable, by making loans to me). On my behalf, MLPF&S will pay MLBANK USA, pursuant to the terms of this Agreement and the Documents, on the fourth Wednesday of each month for all Card purchases posted to my Card/Check Account for that monthly period. However, if MLBANK USA has not received and accepted my signed Statement of Purpose form (Federal Reserve Form FR U-1), I understand that the entire amount of the charges posted to my Card/Check account will be debited from my account once the sum of my Visa card purchases exceeds $100,000 in any monthly cycle. In addition, any subsequent charges not exceeding $100,000 posted to my Card/Check account during the same monthly cycle will be paid by direct debit to my account on the fourth Wednesday of the month. I acknowledge that I have the right under applicable federal law to receive advance notice of the varying amounts of the debit described above but waive my right to do so, as long as the amount does not exceed five hundred thousand dollars. If I choose, I may elect to have this payment made by another means which is not otherwise incompatible with MLPF&S' operations. If I choose to have this payment made by such other means, I will notify MLPF&S in writing of my desire to do so.

### AGREEMENT NOT TO DISPOSE OF ASSETS
34. By subscribing to the CMA Visa Gold Program or the CMA Visa Signature Program, I agree that I will not dispose of my assets in my CMA Service account or any other account I may have with either MLPF&S or MLBANK USA. If such disposal will negatively affect my ability to pay MLBANK USA for Card transactions. However, I may continue to trade securities in my Securities Account.